The case for argument today is 20-1447, Veneris v. Army. Ms. Cannon, please proceed. Thank you, ma'am. May it please the Court, my name is Sherri Cannon, and I represent the petitioner Mark Veneris. We are here today on appeal from the MSTD Administrative Judge's decision that the violation of his housing was not a violation of NSERA, the LQA. We appealed that decision because it is wrong on the law and ignores DOD guidance in existence at the time the decision was made, and something that the AJ also ignored. Ignoring the policies also constituted harmful procedural error both by the agency and the Administrative Judge. When the agency ignored guidance from 2013, which is consistent with and supplements the State Department's DSRR regulations, and ignores the fact that NSERA protected Mr. Veneris while he was on military orders in 2016 and 2017, essentially requiring the agency to treat him like all others. Ms. Cannon, can I interrupt this for just a moment? This is Judge Bryson. Do you agree with the government that DSSR Sections 031.11 and 031.12 are the governing sources of the decision in this case? Partly. We believe that you need to look at that before you look at the DOD supplements that actually work well and work together with that DSSR. We believe that the 31.12 has been misapplied here, and that he had continuous service, and that it actually does apply to him, and he meets the qualifications of that. I understand the argument, but if we were to conclude, for example, if we were to disagree with you and conclude that 31.12 does not apply here, would that end the case? No, because if 31-12 does not apply, what does apply? Would be the DOD guidance in effect at the time. Maybe I wasn't clear when saying it doesn't apply. I mean, if it applied, but if one were to conclude from 31.12 that Mr. Venaris was not entitled to a living quota adjustment or allowance, that would be the end of the case, right? I don't believe so. The case was premised originally, sir, on a violation of USERRA, which is obviously the reason for us being in the MSPB and here today to start with, but also when you review the record that we have here, which unfortunately does not include a transcript of the hearing, the issue of the continuous service came up in the hearing and was briefly discussed, and I believe if you look at it in context, it supports our harmful error argument, that that is where it goes to the harmful error argument, not necessarily to the USERRA argument. So I will continue. The first three issues on appeal are whether the agency's decision to deny the LQA violated USERRA, and that is military service was a substantial or otherwise motivating factor in its decision, did the agency commit harmful error when it failed to follow the DODI, the policy pronouncements of 2013, and other DOD guidance, and particularly the Hinkle-Bowles memo and attached guidance, that service cannot be taken into account when making an LQA determination, and was uniform service a substantial or motivating factor in the HA's decision. Those three arguments go hand in hand, and I believe the judge just discussed that. The last argument was there prejudice when the hearing was not recorded by the presiding judge. If I have time to get to it, I will, but it's quite clear from looking at the record, the judge, the administrative judge with respect to that in his opinion, doesn't do a lot of legal analysis of anything that we have raised on appeal, but instead uses a lot of words like this person recollects, or this person remembers. There's not a lot of this person can testify to. There's no credibility findings on the record which the agency tries to bring up on appeal. So we believe there is prejudice to us and for the court in trying to make a determination on the record here absent testimony, absent testimony in this case. If you were right about that, the issue of prejudice, what would be the remedy? I assume a remand to have this... To have a new hearing? Yes. At such a new hearing, what would you present that would have changed the outcome? What would have changed the outcome? Well, two things. First, the entire discussion of the military service as a continuation of the civilian service under the DSSR is nowhere in the record. So that would need to be more fully exploited and actually in the record. In this case, it is unfortunate, but I would suggest that there is no such thing as the 2018 do-over policy by Wilkie that Ms. Keller testified to because there's an absence in the record at all of any documentation to support that. That would need to be, in my view, made clearer. I was not the trial counsel in this case, but that is my view that that could be made more clear for this case. Okay. To Judge Moore, are you suggesting that a new hearing, you would make it clearer? Or are you suggesting at the prior hearing, these arguments were in fact made and because we don't have the hearing record, we don't have access to them? Both. With respect to the first issue of the continuous service and the DSSR argument, that was discussed, but it's nowhere in the record that you can review. But with regard to the second issue you brought up, you just want to sort of be the beneficiary of a new hearing. You want to raise an argument that wasn't raised in the first, undisputedly sort of wasn't raised in the first argument. No, it was raised. The agency argues, by the agency, the agency argues without any documentary or other support, Ms. Keller testified that they applied a 2018 policy to this particular transaction. The judge basically doesn't address that at all in his decision, and we believe that's error to apply a 2018 policy to a 2016, to a request that was made in 2016 and 2017 because the applicable policies in the course of the time were also ignored. I just think it needs to be more clear on the record that that's what the agency was arguing, and it's what they're arguing now. On the fifth issue, we are prejudiced. I'm sorry, Ms. Cannon? In situations in which a transcript is lost and it occurs with moderate frequency, one recourse that parties often employ is to prepare an affidavit summarizing what was in the hearing with respect to issues that they regard as being important. Was that done here? Not by either party, sir. Okay. Go ahead. Okay, I'm sorry. So, for the purposes of the first three issues, we note that being called to duty in the exact same position, in the exact same chair, doing the exact same duties, was not Mr. Benner's choice. He was called to active duty as a gap filler, meaning they didn't have another civilian to take his position when his term expired. This was not something where he resigned to find happiness elsewhere. His term expired as a federal employee and was not allowed by federal regulation or statute to stay in that job. The agency itself filled that stopgap measure by ordering him to duty. It is irrelevant in our view that he's a Marine reservist. He could have been an Air Force reservist, an Army reservist, a Coast Guard reservist. It doesn't matter. He was ordered to duty by the Army and continuously served in the same exact role for a period of time prior to accepting a position, another Army position, as a civilian. And that has been completely overlooked by the judge, and it's not apparent in the record. But we believe on the law you can rule if you find such, because there is a record of what sequence events that occurred. At all times... Counsel, I just want to point out you're using your rebuttal time, which you're welcome to do if you wish. I will for a couple more seconds, and then I will turn the tables over. At all times relied upon by the agency to deny Mr. Benner, he was on orders that intervened to stop his move home, which by all accounts, and which is undisputed, was all set to go forward with transportation costs allowed by law, and as civilian transportation orders were ready to go. The court has opined, as have others, that Usera is to be liberally construed for the benefit of the military member. Here is the fact that he was supposed to be protected during his military time, a time in which he was not a volunteer, and his life as a civilian should have been protected, and it was not. The agency itself did that by continuing to provide LQA during his reserve time at all times after he served as a reservist. So he had continuous service in that same job in the exact same chair, and continued to get LQA as a reservist based on his U.S. higher status. That is consistent, consistent not only with the DSSR, but DOG policy, the DODI, and the Hinkle-Bowles memo. The agency, in essence, treated him the same as if he was still a U.S. higher during his period of reserve time, and get a bout face during the civilian service that we're talking about for periods of time in his new job. The judge didn't make any note of this anywhere in his decision. There's no analysis of this, and the opinion itself doesn't discuss any governing law in any great depth about the policies at issue that the agency ignores. But finally, we believe it's pretty obvious the judge used the military orders to deny the Usera claim. He essentially, like in Erickson's, used the military orders, which he couldn't refuse, to show his lack of entitlement to a benefit using the theory that the documents are a record of the service, and that the service underlying the documents are not at issue or not important. We completely disagree with this, and we believe it falls in line with Erickson, where the gentleman was absent from duty, and the Postal Service fired him, and the court says you can't look at the You have to look at the reason he was absent from duty, and we believe, despite the agency's arguments to the contrary, that this is an analogous situation, and I cede my time. Okay. Let's hear from a opposing counsel. Thank you, Your Honor. Robert Capura, on behalf of the Army, and may it please the Court. The sole question before the Court today is whether the Merit Systems Protection Board erred when it affirmed the Army's denial of LQA to Mr. Venaris. Substantial evidence in the record establishes that it did not. Specifically, the evidence in the record demonstrates that the Army did not inappropriately consider Mr. Venaris's reserve military service in its determination to deny the LQA. Mr. Capura, this is Judge Bryson. Let me ask you a question about the scope of the MSP's jurisdiction in a case like this. I mean, we know that the MSPB has jurisdiction over the USERRA claim, but does it also have jurisdiction to decide the underlying regulatory issue? And what I mean by that is this. Suppose that we were to conclude that USERRA was not violated in as much as there was no prejudice, there was no discrimination against Mr. Venaris based on his military service, but that the agency misapplied the pertinent regulations, and that under a proper application of those regulations, he and other people like him who do not have a USERRA claim would be given the benefit. Does the MSPB have the jurisdiction not only to decide the USERRA issue, but also to decide what otherwise would be an APA-type issue of whether the regulation has been violated in a particular case? Well, Your Honor, that question was not raised… I understand, but I'm interested because it's not inconceivable that one could conclude that the regulation was violated, but not in a way that was discriminatory based on military service. Well, Your Honor, if the question had been raised to the board, yes, it's possible they could have reached that issue as to whether or not the regulation was appropriately applied. However, in this case, as I mentioned, that wasn't the question that was raised. It was whether or not the military service impacted the denial of the DLQA. So I wouldn't go so far as to say that it's outside the scope of the board's jurisdiction. I would just simply state that it's outside the scope of this case. Okay. And with regard to that, the two key issues that support the board's finding is that, first and foremost, the dispositive fact is undisputed, that at the time Mr. Venaris was called to his reserve duty in June 2016,  this is established in the record both by his reserve orders, which are in the appendix at 214, and also by his discharge papers, which are in the appendix at page 91. Both of them show that he was living in Olsengestadt, Germany, and the record further establishes that he had been there for the length of that reserve term position. Going beyond that, there's this issue that's been raised of what Mr. Venaris would have done had he not been called to military service. As we discussed in our briefing, this is a hypothetical scenario. And just to briefly respond to one point that was made by counsel, our briefing never questioned the credibility of Mr. Venaris' testimony. Rather, we simply state that, as a hypothetical scenario, it's impossible to know what would have happened had he not gone on military orders. But even going beyond that, and there's one point that I would like to clear up, both before the board, and we reference this argument in our briefing to the court, the Army asserted that if we take that hypothetical scenario where Mr. Venaris had not been called on reserve orders and had returned to the United States, even in that scenario, he would not have been eligible for a living quarters allowance. That is correct, and it's established by evidence in the record. One point I would like to clear up is that the government stated that he would have needed to return to the United States for 180 days. The applicable regulation that was actually in force at the time is actually less lenient than that. In the record at page 265, the applicable regulation states that, in fact, he would have had to have returned to the United States for a full year in order to... So, counsel, to fast forward your argument, do I understand that what you're saying is that you can't ultimately find there was any prejudice, even if the judge had based a decision in part on military service or military records, because the same result would have applied had he returned and never been called up on active duty to begin with? That's correct, Your Honor. That's part of our argument, yes. Mr. Kippur, this is Judge Shen. You're saying that if he had been hired in 2017 after having, I don't know, been living back at his original home residence in Illinois after his 2016 job ended in Stuttgart, he wouldn't have qualified under this regulation requirement of needing to be back in the United States for a year? Your Honor, he would have had to have returned to the United States and permanently resided there for a full year. That's correct. Right, so I don't recall the precise facts here, but just on the precise facts here, are you saying that he would not have been able to have been present and residing in the United States for a full year on these facts? Yes, that's correct, Your Honor. In the appendix at page 237, it shows that the job that he eventually went into, which we refer to as the interagency job, that posting didn't go up until August of 2016. So he leaves the term position in June of 2016. The job posting for the interagency position goes up on August 8th, and the record shows that he accepted that position in September of 2016. So from his departure from the term position to the acceptance of the interagency position was just a couple days over three months, from June to September. He started in 2017, right? Yes, he eventually entered into the position in April of 2017, I believe. But the regulation which would have controlled in the hypothetical scenario where he returned to the United States, it's Army and Europe Regulation 690-500.592. And as I mentioned, it's in the record. And at page 265, paragraph 7A1 states, and I'm quoting, employees who previously vacate an outside United States civilian or contractor position must have resided permanently in the United States for at least one year immediately before accepting the formal job offer, unquote. So the time... Go ahead, I'm sorry. Go ahead. No, all I was going to say, Your Honor, was that therefore the regulation states that the key time period there is accepting the formal job offer. Mr. Venaris, in his application for LQA, at page 228 of the record, states that he was offered the interagency position on September 21st, 2016, and he put in his application for LQA on September 22nd, the very next day. So again, there was just over three months from when he left the civilian term position to when he accepted the formal job offer. Let me see if I understand. And I'm a little confused by one of the applicable regulations here. I think it's 03112B of the State Department regulations. Suppose that he had taken the four-year job with the civilian agency, and then that arrangement had with it a one-year company option in which the company decided to exercise. So he spent the fifth year with the same operation, the same agency that he spent the earlier four years. And then he took the job that he later sought LQA for. Under 03112B, would he in that situation be eligible because he had been recruited for the first job in the United States, and the job with the second civilian agency was his second job? Generally, yes, Your Honor. The way I understand your hypothetical is essentially you're saying that instead of going to the Marines, he basically stayed with the first job through five years and then immediately transferred to the second job. Possibly, Your Honor. There is some indication in the record that it was questionable whether or not the LQA that he had been granted for the term position was appropriately granted. But beyond that, the general hypothetical where someone is recruited from the United States, is serving overseas, and then moves directly from that position, applies for, accepts, and then moves directly into another overseas position, yes, 03112 would grant it in that situation. Okay, that's clarification. Thank you. Yes. However, the distinction that I would make here is that while we've been engaging in this hypothetical discussion based on the assertions made by Mr. Venaris, the record establishes that there was no way for that to happen because the term position terminated in June 2016. So regardless of whether he was called to military service, again, he would not have been able to return to the United States for a longer period of time, for a sufficient period of time. But looking back at the State Department regulation, which controls in this case, the reason why the Army in fact applied this regulation based on the facts of the record as they actually are, is that 3112 does provide a path for an individual who is serving overseas not of their own accord. In other words, someone who may have been called on military orders. It offers them that path to qualify for LQA. The reason why Mr. Venaris didn't qualify is that when he was called to military service, he was in fact living in Germany of his own accord. He applied for the civilian position in Germany. That was his choice. So in that sense, he was there voluntarily as he accepted that position and worked in the position and then was called to military duty from his residence in Germany, not the United States. So going back to a question, Judge Bryson, that you asked to opposing counsel, yes, the Department of State regulation 03112 does control and its application to the facts in the record essentially end the inquiry because the question was not where was he for his military service. The question is where was he prior to his military service. And the record shows that he was in Germany. Go ahead, Your Honor. I'm sorry. No, I'm sorry. I thought you had concluded. Yes, Your Honor. If the court has no further questions, I will conclude at this point. Okay. Ms. Cannon, how much remaining rebuttal time does she have? Judge Moore, she has just under three minutes. Okay. Please proceed, Ms. Cannon. I will try not to talk too fast. One of the things I would like to address is this question of whether the initial granting of the LQA is questionable. That's completely irrelevant and a red herring. He was given LQA. The record reflects he was given LQA, and if the agency made a mistake, which we don't concede that it did four years earlier, it's just not relevant to what you have to look at here. I believe the agency is off on it in a universe that we're not off on with respect to what is hypothetical. If Mr. Venner had not been called to active duty in his same exact job, he did not have a choice but to go home. The record is clear what would have happened to him. The Status of Forces Agreement required him to return home. He had a transportation agreement that was valid. He had orders that would have allowed his physical, his personal goods, and himself to be transported at the agency's expense home. So he was required to go home? I mean, he could have gone to Zanzibar, right? He could have, but he couldn't stay in Germany absent taking and intervening action, which he hadn't taken. All right. Okay. So we don't believe that the question of whether he had to go home is a hypothetical or not. His testimony is not hypothetical. It is actual. He took all reasonable steps at the termination of his term appointment to go back to the United States. And the only reason he didn't is because the agency called him to active duty. So the other question I'd like to address is the agency policies in effect here say to treat him as a deployed reservist as if it had never happened. And this goes to one of your questions about the continuous employment. And it shows there's USERA discrimination here. That goes right to the point. If he had been, for some reason, able to extend his term appointment for a year, there is no question that he would have gotten LQA that year. There's also no question that the agency granted him that LQA as if he was a U.S. hire for the time he was on the reserve duty. That is in the record. And to the extent it's not because the testimony is excluded from the judge's decision, it's prejudicial. Keller noted in her testimony and the administrative judge acknowledged reserve military duty does not alter his U.S. hire status. That is exactly what we're arguing, that when he went on reserve duty, it certainly did alter his U.S. hire status, which was impermissible. Basically, the one-plus years he was on reserve duty should have been treated just exactly as the court has suggested, which was a continuation of the job he was doing before and constituted substantially continuous employment under 31.12 and the supplemental guidance that was in effect that you go to thereafter, which is you have to ignore, for lack of a better word, you need to ignore the fact that these were military orders. You can't take that into effect when determining a U.S. hire status. And the five-plus continuous years, he was entitled to U.S. hire status. And I believe the administrative judge acknowledges that in his decision, which he then completely takes nowhere. Okay, Ms. Cannon, I'm sorry, but your time is up. That concludes our arguments for today in this case. This case is taken under submission.